EXHIBIT 2

26CV497236
Santa Clara – Civil

M. Bui

**YAU-GENE CHAN, In Pro Per**
2010 El Camino Real, #852
Santa Clara, California 95050
Telephone: (408) 667-0788
Email: ygchan@itu.edu

26CV497236

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SANTA CLARA — UNLIMITED CIVIL JURISDICTION**

| | | |
|---|---|---|
| **YAU-GENE CHAN, an individual, on his own behalf and derivatively on behalf of INTERNATIONAL TECHNOLOGICAL UNIVERSITY, a California nonprofit corporation,** | ) | **Case No.** 26CV497236 |
| Plaintiff, | ) | **COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND DECLARATORY RELIEF — Including Derivative Causes of Action under Cal. Corp. Code § 5710** |
| and | ) | |
| **INTERNATIONAL TECHNOLOGICAL UNIVERSITY, a California nonprofit corporation,** | ) | 1. 42 U.S.C. § 1981 (Race Discrimination — Continuing) |
| Nominal Plaintiff (as to the derivative causes only), | ) | 2. 42 U.S.C. § 1985(3) (Conspiracy) |
| v. | ) | 3. Cartwright Act (Derivative) |
| JAMIENNE S. STUDLEY, an individual; | ) | 4. Tortious Interference Contract |
| MARIA TOYODA, an individual; | ) | 5. Tortious Interference Prospective |
| TRACY POON | ) | 6. Aiding/Abetting Fiduciary Duty (Derivative) |
| | | 7. Breach of Fiduciary Duty (Cal. Corp. Code §§ 5230-5235; Derivative) |
| | | 8. California UCL (§ 17200) |
| | | 9. Declaratory and Injunctive |

Flanagan, Mark

| | | |
|---|---|---|
| TAMBASCIA, an individual; | | Relief |
| STEPHANIE BOND HUIE, an individual; | ) | 10. Civil RICO (18 U.S.C. § 1962) — Continuing Pattern |
| CHRISTOPHER OBERG, an individual; | ) | |
| JACKIE GARDINA, an individual; | ) | 11. Common-Law Fraud (Nov 2023 Agreement; Dec 6 2023 Amendment) |
| ELISE SCANLON, an individual; | ) | |
| RICHARD WINN, an individual; | ) | 12. Retaliation under § 1981 (CBOCS West) — Continuing |
| GEOFFREY BANNISTER, an individual; | ) | |
| GREGORY O'BRIEN, an individual; | ) | |
| ALVIN CHEUNG, an individual; | ) | **DEMAND FOR JURY TRIAL** |
| BARRY RYAN, an individual; | ) | |
| BHASKAR KURA, an individual; | ) | **AMOUNT: Not less than** |
| REED DASENBROCK, an individual; | ) | **$100,000,000** |
| WASC SENIOR COLLEGE AND | ) | |
| UNIVERSITY COMMISSION, | ) | |
| a California nonprofit corporation; | ) | |
| and DOES 1 through 50, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff YAU-GENE CHAN, on his own behalf and derivatively on behalf of International Technological University ("ITU"), appearing in propria persona, complains and alleges as follows:

## I. INTRODUCTION

1. This is an action by a Chinese-American university president — co-founder and son of the founder of ITU — for damages and injunctive relief arising from a decade-long, racially-motivated, cartel-coordinated, and *continuing* campaign of regulatory retaliation by senior officers, commissioners, employees, and outside agents of the WASC Senior College and University Commission ("WSCUC") and private-sector co-conspirators. Plaintiff brings certain claims in his individual capacity for the race-based discrimination and retaliation directed at him personally, and brings certain claims derivatively on behalf of ITU for the corporate injuries sustained by ITU as the institutional victim of the Defendants' cartel scheme. The conduct alleged herein is not limited to past acts; it continues to the present day, where it operates as continuing race-based retaliation against Plaintiff because Plaintiff continues to serve as ITU's CEO.

2. The continuing nature of the wrong is the central feature of this case. WSCUC's adverse action against ITU has at all times been targeted at Plaintiff personally for being a Chinese-American CEO. The same accreditation posture under which Defendants reaffirmed ITU for six years in July 2018 under non-Asian Caucasian Defendant Gregory O'Brien (Exhibit J) was used to place ITU under an Order to Show Cause within three days of Plaintiff's October 15, 2019 reinstatement (Exhibit D), and is now used to refuse to vacate the June 27, 2025 final withdrawal of ITU's accreditation. The conduct continues every day that WSCUC publishes on its website that ITU is "withdrawn" for non-compliance; every day Defendant Toyoda's October 28, 2025 Cease and Desist letter chills ITU's continued operation; and every day Defendants persist in refusing the appropriate corrective action that would return ITU's accreditation status to its pre-October-2019 posture. If Defendant O'Brien were restored as ITU's CEO tomorrow, the

discriminatory regulatory posture would dissipate. That but-for fact is direct evidence that the conduct targets Plaintiff because of his race.

3. ITU is a 32-year-old California nonprofit graduate university founded in 1994 by the late Professor Shu-Park Chan, Plaintiff's father — founding chair of the Department of Electrical Engineering and Computer Science at Santa Clara University, IEEE Fellow, and first Asian-American appointed by President George H.W. Bush to the Fulbright Scholarship Board. ITU serves predominantly Chinese and Indian international students in industry-relevant STEM programs designed to produce graduates immediately employable by Silicon Valley technology employers. ITU operates a debt-free tuition model distinct from the federally-loan-financed mass-enrollment institutions that contribute to the national student-loan default crisis presently exceeding $1.81 trillion. On information and belief, ITU's competitive success in producing employable graduates without federal-loan dependence is the very offense that drew cartel attention.

4. The case arises out of an interconnected continuing course of conduct beginning in February 2015 and continuing to the present:

**The 2015 Takeover (background and pattern).** Between February 6, 2015 and October 15, 2019, WSCUC officers and private-sector confederates executed a hostile takeover of ITU. The takeover conduct is included herein as pattern and comparator evidence supporting the surviving and continuing causes of action; Plaintiff does not seek standalone damages for time-barred discrete acts of the 2015-2019 period.

**The July 2018 Six-Year Reaffirmation (comparator).** WSCUC, under Defendant Studley's six-month-old presidency, issued a Commission Action Letter dated July 20, 2018 (Exhibit J)

reaffirming ITU's accreditation for the maximum sanction-free period of six years, with eight specific commendations to ITU under Defendant O'Brien's leadership.

**The 2019-Present Continuing Discriminatory Campaign.** On August 1, 2019, ITU Trustee Ivan Chan transmitted a formal written emergency motion to the ITU Board citing California Attorney General Guidelines for Charities and IRS Requirements for Charities exposing nonprofit board members to personal financial liability for excessive compensation paid to Defendant O'Brien (Exhibit G). On August 8, 2019, Defendant O'Brien tendered his resignation; the O'Brien-aligned Trustees thereafter resigned. On October 15, 2019, the reconstituted ITU Board reinstated Plaintiff as CEO. Within twenty-four hours of Plaintiff's reinstatement — on October 16, 2019 — Defendant Studley personally recommended that ITU be placed on an Order to Show Cause. The Order issued on October 18, 2019 (Exhibit D), foreshortening by fifteen months the six-year reaffirmation Defendant Studley herself had presided over. The continuing campaign culminated in (i) the June 17, 2022 withdrawal action and March 17, 2023 reissuance; (ii) the November 14, 2023 Stipulated Pathway Agreement (Exhibit A) and December 6, 2023 First Amendment containing Defendant Studley's representation that "The Commission looks forward to the opportunities of the Special Visit and June 2024 Commission meeting"; (iii) the April 3-5, 2024 Special Visit followed by the post-visit addition of CFR 1.8 admitted in WSCUC's own July 18, 2024 Commission Action Letter (Exhibit E); (iv) Defendant Studley's June 23, 2024 "High Importance" prejudgment letter (Exhibit F); (v) the May 6, 2025 Appeals Panel decision; (vi) the June 27, 2025 final Commission Action Letter signed by Defendant Toyoda; and (vii) Defendant Toyoda's October 28, 2025 "Cease and Desist" letter, which continues to publish to the present.

5. The accreditation conduct so described is not accreditation. It is the use of color-of-law accreditation authority — vested in WSCUC by virtue of its U.S. Department of Education recognition as a gatekeeper to federal Title IV funding and SEVP certification — as a continuing instrument of (a) retaliation against Plaintiff individually for his contemporaneous whistleblower complaints to WSCUC, the U.S. Department of Education, CHEA, and the Office of the U.S. President; (b) protection of insider relationships among WSCUC officers and member-institution representatives; and (c) suppression of an institution whose 32-year track record exposes the absurdity of the accreditation-protected debt-financed enrollment-mill model. The racially-discriminatory character is established by direct comparator evidence: non-Asian Caucasian Defendant O'Brien received the July 20, 2018 six-year reaffirmation with eight commendations during the $7.1 million-loss year (Exhibit J); Chinese-American Plaintiff received an Order to Show Cause within three days of his reinstatement (Exhibit D); and the conduct continues to the present day where it operates as continuing race-based retaliation against Plaintiff for being ITU's Chinese-American CEO.

6. Plaintiff brings this action (a) in his individual capacity for damages he has personally sustained from the Defendants' race-based discrimination, retaliation, and tortious conduct directed at him; and (b) derivatively on behalf of ITU under Cal. Corp. Code § 5710 for the institutional injuries sustained by ITU as a result of the Defendants' fiduciary breaches, antitrust conduct, fraud, and related torts. Plaintiff is a member of ITU as its President and Chief Executive Officer with authority to make demand on the ITU Board. Plaintiff has informed the ITU Board of his intent to bring derivative claims on behalf of ITU; the ITU Board has authorized this filing; and demand is in any event excused as futile to the extent the wrongful

conduct itself caused or is caused by Defendants' continuing efforts to undermine ITU's governance.

7. Plaintiff's claims are not barred by, and are not within the scope of, any release executed by ITU as a corporate entity. The November 14, 2023 Stipulated Pathway Agreement (Exhibit A) and the December 6, 2023 First Amendment were signed by Plaintiff in his corporate capacity on behalf of ITU; neither purported to release Plaintiff's individual claims; neither identified by name, capacity, or status the conduct of the individual Defendants now sued; and neither could lawfully release the federal statutory civil rights, federal antitrust, federal Civil RICO, or continuing-violation claims pleaded herein. Defendants' continuing conduct after the November 14, 2023 Agreement — including the post-visit addition of CFR 1.8 admitted in Exhibit E and the June 27, 2025 final withdrawal — itself voids any release as to the post-Agreement continuing wrongs.

## II. PARTIES

8. Plaintiff **YAU-GENE CHAN** is an individual residing in Santa Clara County, California. Plaintiff is the President and Chief Executive Officer of ITU and the son of ITU's late founder Professor Shu-Park Chan. Plaintiff is a national of the United States and at all material times was a person of Chinese ethnicity within the protection of 42 U.S.C. § 1981. Plaintiff appears in propria persona.

9. Nominal Plaintiff **INTERNATIONAL TECHNOLOGICAL UNIVERSITY** ("ITU") is a California nonprofit graduate university with its principal place of business at 2010 El Camino Real, #852, Santa Clara, California. ITU is named as Nominal Plaintiff for the derivative causes of action pleaded herein (Counts 3, 6, 7, and portions of Counts 8, 9, and 11). The recovery on the derivative causes of action shall inure to ITU's benefit.

### A. The WSCUC Defendants — Compensated Executives, Not Volunteer Directors Under § 5239

10. Defendant **JAMIENNE S. STUDLEY**, on information and belief residing in Alameda County, California, served as paid WSCUC President from January 2018 through approximately early 2025. Cal. Corp. Code § 5239 immunity is inapplicable because Defendant Studley was a compensated executive, not a volunteer director. To the extent quasi-judicial immunity is asserted, that defense is defeated because Defendant Studley (a) acted ultra vires of WSCUC's published procedures; (b) combined investigative, prosecutorial, executive, and adjudicative functions; (c) acted with actual malice and racial animus; and (d) persisted in oversight of the appeal of her own conduct after Plaintiff's formal recusal demand.

11. Defendant **MARIA TOYODA**, on information and belief residing in California, has served as paid WSCUC President since approximately March 2025. § 5239 immunity is inapplicable. Defendant Toyoda signed the June 27, 2025 final Commission Action Letter and the October 28, 2025 Cease and Desist letter and continues to authorize WSCUC's continuing publication of pretextual non-compliance findings concerning ITU and Plaintiff — conduct constituting the most recent continuing predicate acts alleged in Count 10.

12. Defendant **TRACY POON TAMBASCIA**, on information and belief residing in Los Angeles County, California, served as Chair of the WSCUC Commission. To the extent Defendant Tambascia served as a volunteer director, the § 5239(b) carve-outs apply. Defendant Tambascia signed the November 21, 2024 dismissal of Plaintiff's formal recusal demand on behalf of a so-called "Executive Committee" (Does 1-25).

13. Defendant **STEPHANIE BOND HUIE**, on information and belief residing in California, served as paid WSCUC Vice President and as the staff liaison to the April 3-5, 2024 Special Visit. § 5239 immunity is inapplicable.

14. Defendant **CHRISTOPHER OBERG**, on information and belief residing in California, served as paid Interim WSCUC President during the 2024-2025 transition. § 5239 immunity is inapplicable.

15. Defendant **JACKIE GARDINA**, on information and belief residing in Santa Barbara County, California, chaired the WSCUC Appeals Panel that adjudicated ITU's appeal of the July 18, 2024 withdrawal — a panel personally selected by Defendant Studley over Plaintiff's pending recusal objection.

16. Defendant **ELISE SCANLON**, on information and belief residing in California, of the Elise Scanlon Law Group, served as paid outside legal counsel to WSCUC. § 5239 immunity is wholly inapplicable to outside counsel.

### B. The Background Pattern Defendants (2015-2019 — Conduct as Background, Pattern, and Continuing Cartel Evidence)

17. Defendant **RICHARD WINN**, on information and belief residing in California, served as paid WSCUC Executive Vice President during 2014-2015. On information and belief, Defendant Winn served as WSCUC accreditation liaison for ITU, Sofia University, and Defendant Cheung's California Northstate University College of Pharmacy and placed Defendant O'Brien as paid accreditation consultant to all three institutions, supplying the cartel structure that continues to operate.

18. Defendant **GEOFFREY BANNISTER**, on information and belief residing in California or another state, chaired the February 2015 WSCUC Investigatory Panel. Defendant Bannister is, on information and belief, a long-time personal friend and vacation companion of both Defendant Winn and Defendant O'Brien.

19. Defendant **GREGORY O'BRIEN**, on information and belief residing in Florida or another state, served as ITU's paid CEO from February 8, 2015 through August 8, 2019. ITU's IRS Form 990 filings document Defendant O'Brien's CEO-tenure compensation at approximately $356,188 per year plus an ITU-furnished apartment and an ITU-furnished Mercedes — materially in excess of the $270,000 salary paid to the Chinese-American Plaintiff during Plaintiff's prior CEO tenure. § 5239 immunity is wholly inapplicable. Defendant O'Brien's compensation package "was personally negotiated by Dr. Alvin Cheung" (Exhibit G). On August 8, 2019, seven days after Exhibit G, Defendant O'Brien tendered his resignation; Defendant Cheung and the then-resigning Board approved an additional approximately $80,000 severance.

20. Defendant **ALVIN CHEUNG**, on information and belief residing in California, is President of California Northstate University College of Pharmacy. On information and belief, the WSCUC accreditation extended to Defendant Cheung's institution was a material element of the quid pro quo by which Defendant Cheung was recruited into the ITU Board takeover. Defendant Cheung served as ITU Board Chair during the 2015-2019 takeover years. Defendant Cheung's conduct falls within the § 5239(b)(1)-(5) carve-outs: (a) self-dealing in personally negotiating O'Brien's excessive compensation; (b) intentional misconduct in instructing Morrison Foerster LLP not to investigate the conflicts of interest of Defendant O'Brien (per the April 11, 2016 Morgan Lewis letter, Exhibit B); (c) Cheung's words to the ITU Board at the February 6, 2015 closed-door takeover meeting — "either we remove Yau or ITU is finished"; and (d) knowing violation of Cal. Corp. Code §§ 5230-5235.

21. Defendant **BARRY RYAN**, on information and belief residing in California, held a dual role as sitting WSCUC Commissioner and as Executive Vice President of Sofia University. WSCUC's own public website on May 6, 2016 described him as "Executive Vice President,

Sofia University" while simultaneously listing him as a Commissioner; the same website on August 15, 2016 described him as having transitioned to "Provost and Vice President of Academic Affairs, International Technological University" while continuing as Commissioner. Per Exhibit G, Defendant Ryan was hired as ITU Provost over the objections of Trustees Hsieh and Ivan Chan at compensation "over a quarter a million annual." Defendant Ryan thereafter, while still a sitting Commissioner, became President of Sofia University — the institution to which Defendant O'Brien had disclosed on the July 11, 2019 WSCUC BSCS Board session his plan to transfer ITU's remaining 450 students and approximately $9 million in associated tuition revenue.

22. Defendant **BHASKAR KURA**, on information and belief residing in or near New Orleans, Louisiana, was Defendant O'Brien's professional subordinate while both were employed at the University of New Orleans (where Defendant O'Brien served as Chancellor for over sixteen years), and the two have been close personal friends for over two decades. Defendant Kura is documented in contemporaneous communications as referring to Defendant O'Brien as his "Godfather, who I will stand behind no matter what!" Defendant Kura has, on information and belief, advocated that the ITU Board ignore complaints of racial discrimination against Defendant O'Brien.

23. Defendant **REED DASENBROCK**, on information and belief residing in Honolulu, Hawai'i, served as a WSCUC Commissioner. Defendant Dasenbrock was Commission Chair when Defendant Studley signed Exhibit J reaffirming ITU under O'Brien in July 2018, and co-signed with Defendant Studley the October 18, 2019 Show Cause Order against ITU within three days of Plaintiff's reinstatement (Exhibit D) — the same Studley-Dasenbrock pair in both the July 2018 reaffirmation and the October 2019 sanction.

### C. The Entity Defendant and Doe Defendants

24. Defendant **WASC SENIOR COLLEGE AND UNIVERSITY COMMISSION** ("WSCUC") is a California nonprofit corporation with principal place of business in Alameda County, California. WSCUC accredits over 200 institutions and, until 2021, was the sole regional accreditor for institutions in California and Hawai'i with which institutions must transact to obtain SEVP certification and Title IV federal student-aid funding eligibility.

25. **DOES 1 through 25** are the unnamed WSCUC Executive Committee members who participated in the November 21, 2024 determination dismissing Plaintiff's formal recusal demand concerning Defendant Studley.

26. **DOES 26 through 50** are agents, employees, co-conspirators, or co-actors of the named Defendants, including without limitation former O'Brien-installed ITU Trustees Thomas Hannen, Betty Sundberg, and Thomas Gold, and former ITU In-House Counsel David Johnson.

27. At all material times each Defendant acted as the agent, employee, partner, joint venturer, alter ego, or co-conspirator of each of the other Defendants. The conspiracy theory of joint and several liability — pursuant to *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) — applies throughout the Causes of Action below to hold each Defendant liable for the wrongful acts of each co-conspirator within the scope of the common plan.

## III. JURISDICTION AND VENUE

28. This Court has subject-matter jurisdiction pursuant to California Constitution Article VI, § 10 and Code of Civil Procedure § 410.10. The amount in controversy exceeds the $25,000 unlimited-civil threshold. State courts have concurrent jurisdiction over Plaintiff's federal civil rights claims under *Tafflin v. Levitt*, 493 U.S. 455, 458-59 (1990) (the "deeply rooted presumption" of concurrent jurisdiction), and *Yellow Freight Sys. v. Donnelly*, 494 U.S. 820

(1990). State courts have concurrent jurisdiction over Plaintiff's federal Civil RICO claim under *Tafflin*. Plaintiff's antitrust claim is brought under the California Cartwright Act, as to which this Court has direct jurisdiction. Plaintiff's derivative claims are properly brought in this Court under Cal. Corp. Code § 5710.

29. Venue is proper in this County under Code of Civil Procedure § 395 because Plaintiff resides in this County, ITU's principal place of business is at 2010 El Camino Real, #852, Santa Clara, California, and one or more Defendants reside in or transact substantial business in this County.

## IV. FACTUAL ALLEGATIONS

### A. ITU and Plaintiff's Three-Generation Investment (Background)

30. ITU was founded in 1994 by Plaintiff's late father, Professor Shu-Park Chan. Professor Chan took One Dollar ($1) per year as ITU's President from 1994 through approximately 2008-2009.

31. Plaintiff joined ITU full time as an uncompensated volunteer in 2000, establishing ITU's multimedia department and migrating ITU's course delivery onto the Moodle platform. On May 15, 2005, Plaintiff was appointed Executive Vice President of ITU. In 2006, Plaintiff mortgaged the Chan family home and injected approximately $300,000 of personal funds into ITU. Plaintiff took no salary from ITU from 2000 through 2008 — approximately eight years of uncompensated service. Plaintiff was appointed President and CEO in 2011. During Plaintiff's CEO tenure ITU operated with positive year-end surpluses, accumulated approximately $20 million in cash reserves with no debt, attained WSCUC accreditation in February 2013, and grew its student body to over 1,800 students. Plaintiff's CEO-tenure compensation was approximately $270,000 per year.

### B. The Continuing Discriminatory Compensation Disparity

32. **Pre-2015 vs. 2015-2019 Comparator (Background).** Following Plaintiff's February 2015 removal, the O'Brien-installed Board approved compensation to non-Asian Caucasian Defendant O'Brien at approximately $356,188 per year per IRS Form 990, plus ITU-furnished apartment and ITU-furnished Mercedes — materially in excess of the Chinese-American Plaintiff's $270,000 salary — notwithstanding that Defendant O'Brien presided over the depletion of substantially all of ITU's $20 million cash reserves. This compensation disparity is direct comparator evidence of racial discrimination.

33. **Post-Reinstatement Continuing Compensation Suppression.** Following Plaintiff's October 15, 2019 reinstatement, Plaintiff received compensation of only approximately $100,000 per year — less than 30% of Defendant O'Brien's salary and less than 38% of Plaintiff's own pre-2015 salary. In or about 2023, Plaintiff's compensation was reduced to approximately $80,000 per year. Since on or about February 2025, Plaintiff has not been paid any compensation at all while continuing to work full time to keep ITU solvent and defend its accreditation. This compensation suppression is itself a continuing race-discriminatory act under § 1981 — the suppression continues every pay period Plaintiff continues to serve uncompensated as a Chinese-American CEO while the same institutional resources flow elsewhere.

### C. The 2015 Takeover (Background and Pattern Evidence)

34. The February 2015 WSCUC takeover is pleaded herein as background and continuing-pattern evidence. The seven-employee whistleblower complaint of December 8, 2014 was led by ITU's CFO Edward Lam and ITU's CAO Barbara Hecker — both of whom held undisclosed director-level positions at the for-profit competitor Sofia University. Defendant Winn was in continual communication with the complainants, including documented email correspondence

with Defendant Hecker dated January 31-February 1, 2015 (before the panel arrived). In late 2014, Defendant Winn privately urged Plaintiff at a dinner to re-hire Defendant O'Brien; Plaintiff declined. On February 6, 2015, the WSCUC "Investigatory Panel" — created and personally served on by Defendant Winn, chaired by Defendant Bannister, and bound by the predetermined direction Defendant Winn signaled to Defendant Hecker — spent approximately one hour with Plaintiff and the balance of the day with the seven complainants. In a closed-door session from which Plaintiff was barred, Plaintiff was summarily removed as CEO without due process. Defendant Cheung's direct words to the ITU Board: "either we remove Yau or ITU is finished." Within two days — on February 8, 2015 — Defendant O'Brien was installed as ITU's CEO while continuing to hold the Sofia Board Chair position at least through July 15, 2015 per a WSCUC action letter to Sofia signed by then-WSCUC President Petrisko.

### D. Contemporaneous Notice to WSCUC and Federal Oversight (2016 — Protected Activity Anchor for Count 12)

35. Beginning in April 2015 and continuing through 2019, Plaintiff and others repeatedly notified WSCUC and federal oversight authorities in writing of the conflicts of interest and improper conduct of Defendants Winn, Bannister, O'Brien, Cheung, Ryan, and others — opposition activity that supplies the predicate for the continuing-violation retaliation claim in Count 12:

On April 11, 2016, Colin C. West, Partner at Morgan Lewis & Bockius LLP, transmitted on Plaintiff's behalf a formal written letter to five named ITU Board members documenting Defendant Cheung's instruction to Morrison Foerster LLP not to investigate (Exhibit B).

On March 18, 2016, Plaintiff personally transmitted to Defendant Cheung a formal written whistleblower demand for his immediate resignation. Plaintiff was personally terminated by

Defendant O’Brien on or about the day after submitting his whistleblower complaint to WSCUC — direct individual retaliation.

On May 18, 2016, Plaintiff submitted ITU’s Official Complaint to WSCUC (Exhibit C), with the underlying Google Drive evidentiary repository made accessible during 2016 to twenty-two (22) WSCUC Commissioners.

On April 11, 2016, Plaintiff personally transmitted to John B. King, Jr., U.S. Secretary of Education, a formal federal-agency complaint, contemporaneously copied to President Barack Obama at the Office of the U.S. President (Exhibit H). Director Herman S. Bounds, Jr., of the U.S. Department of Education responded by letter dated June 13, 2016, confirming DOE receipt.

On June 27, 2016, Plaintiff personally transmitted a follow-up federal-agency complaint to Director Bounds, contemporaneously copied to Secretary King, Judith S. Eaton (President, CHEA), Mary Ellen Petrisko (President, WSCUC), and the Office of the U.S. President (Exhibit I).

### E. The July 20, 2018 Six-Year Reaffirmation — Direct Comparator Evidence

36. WSCUC issued a Commission Action Letter dated July 20, 2018 reaffirming ITU’s accreditation for the maximum sanction-free period of six years notwithstanding ITU’s contemporaneous financial deterioration. A true and correct copy is attached hereto as Exhibit J. Exhibit J was personally signed by Defendant Studley and copied to Defendant Dasenbrock as Commission Chair. Exhibit J expressly commends ITU under Defendant O’Brien’s leadership in eight specific respects, including a “transparent, forthright, and deliberate self-study process,” “extremely effective and thorough annual operational planning process,” and “highly qualified faculty, most of whom are currently employed in the technology industry.” Exhibit J acknowledges ITU’s “financial challenges” but declines to impose sanction, scheduling instead a

routine Special Visit. The same Studley-Dasenbrock pair signed Exhibit D fifteen months later — within three days of Plaintiff's October 15, 2019 reinstatement — placing ITU under Show Cause on a compliance posture materially identical to that which they had commended in Exhibit J.

### F. October 2019 Reinstatement and Three-Day Show Cause Reversal — The Beginning of the Continuing Discriminatory Campaign

37. On August 1, 2019, ITU Trustee Ivan Chan transmitted to the ITU Board the emergency motion attached as Exhibit G. Exhibit G placed each director on direct written notice of California Attorney General authority to recover excessive compensation; identified Defendants Cheung, Bhaskar Kura, Thomas Gold, Thomas Hannen, and Betty Sundberg as directors who had repeatedly outvoted Trustees Hsieh and Chan in support of Defendant O'Brien's excessive compensation; admitted that Defendant O'Brien's compensation package "was personally negotiated by Dr. Alvin Cheung"; and disclosed Defendant O'Brien's plan at the July 11, 2019 WSCUC BSCS Board session to liquidate ITU and transfer its students to Sofia.

38. On August 8, 2019 — seven days after Exhibit G — Defendant O'Brien tendered his resignation. Defendant Cheung and the resigning Board approved an approximately $80,000 severance. Defendants Cheung, Bhaskar Kura, Hannen, Sundberg, and Gold elected to resign over the August-October 2019 period.

39. On October 15, 2019, the ITU Board as reconstituted reinstated Plaintiff as ITU's Chief Executive Officer.

40. Within twenty-four hours of Plaintiff's reinstatement — on October 16, 2019 — Defendant Studley personally recommended that ITU be placed on an Order to Show Cause. On October 18, 2019, three days after Plaintiff's reinstatement, the Order issued signed jointly by Defendant

Studley and Defendant Dasenbrock (Exhibit D) — the same Studley-Dasenbrock pair who fifteen months earlier signed and were copied on Exhibit J.

41. The only material change between the July 2018 six-year reaffirmation (Exhibit J) and the October 2019 Order to Show Cause (Exhibit D) was the racial identity of ITU's CEO: from non-Asian Caucasian Defendant O'Brien to Chinese-American Plaintiff. The same Studley-Dasenbrock decisionmakers were on both adjudications. The temporal sequence — October 15 reinstatement, October 16 Studley recommendation, October 18 Order — establishes the racial predicate for the continuing discriminatory campaign that has continued unbroken to the present.

## G. The 2022-2023 Withdrawal Action and December 6, 2023 Studley Bad-Faith Representation

42. On June 17, 2022, WSCUC issued a Commission action to withdraw ITU's accreditation; the action was reissued on March 17, 2023. ITU appealed; ITU was represented by Quinn Emanuel Urquhart & Sullivan LLP (Crystal Nix-Hines and David C. Armillei in Los Angeles, Christina L. Wu in San Francisco, Nicole Molee in New York).

43. On November 14, 2023, WSCUC and ITU entered into the Stipulated Pathway Agreement (Exhibit A). On December 6, 2023, WSCUC and ITU executed the First Amendment, which at Recital E expressly confirmed "sufficient basis for the Commission to vacate its action to withdraw ITU's accreditation of June 17, 2022 (as reissued on March 17, 2023), and to continue ITU's accreditation on its current status of Show Cause." Pursuant to the First Amendment, ITU withdrew and dismissed its pending appeal (signed by Quinn Emanuel counsel).

44. The December 6, 2023 First Amendment at Appendix B contains a representation attributed by name to Defendant Studley: "WSCUC President Jamienne S. Studley said, 'The Commission looks forward to the opportunities of the Special Visit and June 2024 Commission meeting to learn more about developments at the institution.'" That representation was material to Plaintiff's

and ITU's decisions to enter the Stipulated Pathway and to dismiss the pending appeal. Defendant Studley nevertheless used the very April 3-5, 2024 Special Visit and June 2024 Commission meeting referenced in her own statement to engineer the July 18, 2024 withdrawal of ITU's accreditation, including the post-visit addition of CFR 1.8.

### H. The 2024 Special Visit, Post-Visit CFR 1.8 Addition, and July 18, 2024 Withdrawal

45. The April 3-5, 2024 Special Visit was conducted under the procedural framework of Exhibit A, which expressly identified four Criteria for Review. After the Visit concluded, WSCUC added a fifth criterion — CFR 1.8. WSCUC's own July 18, 2024 Commission Action Letter (Exhibit E) admits verbatim: "Compliance with CFR 1.8 was added following the Special Visit." The same admission appears in Defendant Studley's June 23, 2024 "High Importance" letter (Exhibit F).

46. On June 23, 2024, four days before the Commission hearing, Defendant Studley personally transmitted Exhibit F prejudging the outcome of the proceeding she was about to oversee. At the June 27, 2024 Commission proceeding, Defendant Scanlon was observed passing written questions to Commission members during their questioning of Plaintiff. Defendant Studley thereafter signed Exhibit E.

### I. 2024-2025 — Defendant Studley's Continuing Oversight of the Appeal of Her Own Conduct

47. On September 3, 2024, Defendant Studley unilaterally denied Plaintiff's appellate-extension request. On September 29, 2024, Defendant Studley wrote that she was "working on designating a Panel to hear ITU's appeal" — choosing the very panel that would sit in judgment of her own conduct. On October 29, 2024, Defendant Studley personally identified the panel members. Plaintiff's October 18, 2024 recusal demand was dismissed on November 21, 2024 by Defendant Tambascia on behalf of the WSCUC "Executive Committee" (Does 1-25).

48. On or before February 24, 2025, WSCUC ceased to be a CHEA-recognized accreditor. The April 16, 2025 Appeals Panel hearing went forward via Zoom. Defendant Studley appeared as "Senior Advisor" or "Past President" notwithstanding Plaintiff's pending recusal objection. By written decision dated May 6, 2025, the Appeals Panel chaired by Defendant Gardina affirmed the withdrawal. By Commission Action Letter dated June 27, 2025, signed by Defendant Toyoda, WSCUC issued its final written decision withdrawing ITU's accreditation.

### J. The Continuing Discrimination After the June 27, 2025 Final Withdrawal

49. Following the June 27, 2025 final withdrawal, Defendants have continued and are continuing wrongful conduct directed at Plaintiff and at ITU, including (a) Defendant Toyoda's October 28, 2025 "Cease and Desist" letter; (b) continuing publication on the WSCUC website of disclosures concerning ITU and Plaintiff designed to foreclose ITU's ability to operate or to be accredited by an alternative accreditor; and (c) continuing interference with Plaintiff's and ITU's prospective relationships with students, faculty, donors, and prospective alternative accreditors. Each of these continuing acts is a separate, currently-occurring wrong actionable in its own right.

### K. Direct, Specific, and Continuing Harm to Plaintiff

50. Defendants' continuing conduct has caused Plaintiff direct, specific, and continuing harm in his individual capacity separate from any harm sustained by ITU, including (a) destruction of Plaintiff's individual employment contract with ITU; (b) substantial and continuing impairment of Plaintiff's individual professional reputation as a Chinese-American university president; (c) deprivation of Plaintiff's right to make and enforce contracts on equal terms with non-Asian citizens under 42 U.S.C. § 1981; (d) severe and continuing emotional distress; (e) deprivation of Plaintiff's expectation of inheritable institutional legacy from his late father; (f) personal legal expenses and out-of-pocket loss; (g) approximately One Million Twenty Thousand Dollars

($1,020,000) in personal loans and donations from Plaintiff to ITU during the period following Plaintiff's October 15, 2019 reinstatement; and (h) cumulative unpaid back-pay measured by the difference between Plaintiff's pre-2015 CEO compensation and Plaintiff's post-reinstatement reduced or zero compensation since 2019.

### L. Continuing RICO Predicate Acts of Mail and Wire Fraud

51. Defendants Studley, Toyoda, Tambascia, Bond Huie, Oberg, Gardina, Scanlon, Dasenbrock, and WSCUC, between October 16, 2019 and the present, have used the United States mails and interstate wire communications on numerous occasions in furtherance of the discriminatory and pretextual scheme. Each transmission constitutes a separate predicate act of mail fraud (18 U.S.C. § 1341) or wire fraud (18 U.S.C. § 1343). Predicate acts include: the October 18, 2019 Show Cause Order (Exhibit D); the June 23, 2024 Studley "High Importance" letter (Exhibit F); the July 18, 2024 Commission Action Letter (Exhibit E); the September 3, 2024 Studley denial of extension; the November 21, 2024 Tambascia dismissal of recusal; the May 6, 2025 Appeals Panel Decision; the June 27, 2025 final Commission Action Letter; the October 28, 2025 Toyoda Cease and Desist letter; and the continuing publication of pretextual non-compliance findings on WSCUC's interstate-accessible website — each website publication constituting a separate continuing predicate act each day it remains published.

## V. STATUTE OF LIMITATIONS, CONTINUING VIOLATION, RELEASE SCOPE, AND § 5239 IMMUNITY-PIERCE PLEADINGS

### A. Continuing Violation Doctrine — Per-Count Tolling

52. **Counts 1, 2, and 12 (§ 1981 / § 1985(3) discrimination and retaliation).** Plaintiff's claims are timely under the continuing violation doctrine of *National R.R. Passenger Corp. v. Morgan*,

536 U.S. 101 (2002), and *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798 (2001). The Defendants' conduct constitutes an ongoing, related course of conduct expressing a single discriminatory policy: the use of WSCUC's color-of-law accreditation authority to target Plaintiff personally for being a Chinese-American CEO. The continuing post-October-2019 compensation suppression, the continuing publication of pretextual non-compliance findings, the continuing maintenance of the June 27, 2025 final withdrawal, and the continuing Toyoda Cease and Desist publication each constitute timely components of the single unlawful practice. The 2024-2025 acts provide the timely anchor; the 2015-2019 conduct is preserved as background pattern and comparator evidence supporting the timely claims, not as standalone time-barred claims. The continuing nature is established by the but-for fact that Defendant O'Brien's restoration as ITU's CEO would dissipate the regulatory posture — proving the conduct targets Plaintiff personally.

53. **Count 10 (Civil RICO).** The pattern of racketeering activity satisfies the "open-ended continuity" standard of *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989). Each Commission Action Letter, each website publication, each Cease and Desist transmission is a separate predicate act with its own clock. The most recent predicate act — Defendant Toyoda's October 28, 2025 Cease and Desist letter and WSCUC's continuing website publication — is timely under any view of the RICO four-year limitations period of *Rotella v. Wood*, 528 U.S. 549 (2000). The continuing pattern threatens future continuation in the absence of injunctive relief, satisfying *H.J. Inc.*'s open-ended continuity requirement.

54. **Counts 11 (Fraud / Negligent Misrepresentation).** The November 14, 2023 Agreement (Exhibit A) and December 6, 2023 First Amendment representations are within the three-year fraud limitations period of Cal. Code Civ. Proc. § 338(d) measured from the discovery of the falsity in the July 18, 2024 Commission Action Letter (Exhibit E).

55. **Counts 6 and 7 (Aiding/Abetting and Breach of Fiduciary Duty — Derivative).** Tolling applies through the period during which the O'Brien-installed Board controlled ITU and concealed the breaches through the demonstrated suppression of the Morrison Foerster investigation, until the October 15, 2019 Board reconstitution. Following Cal. Code Civ. Proc. § 343, the four-year clock for the derivative claims runs from the Board reconstitution on October 15, 2019, making the claims timely if filed before October 15, 2023; tolling under fraudulent concealment and the August 1, 2019 written notice in Exhibit G further extends the period. Alternatively, the continuing-violation theory tied to the cartel pattern restarts the clock for each continuing cartel-coordinated act.

56. **Count 3 (Cartwright Act — Derivative).** The Cartwright Act four-year limitations period under *Cal. Bus. & Prof. Code* § 16750.1 is satisfied by the continuing concerted action: each post-2021 Commission action against ITU, each Toyoda Cease and Desist, and each continuing WSCUC-website publication is a separate timely act in furtherance of the conspiracy.

57. **Counts 4, 5, 8, and 9.** Each is timely under continuing-violation theory tied to ongoing conduct.

### B. Release Scope

58. Neither the November 14, 2023 Stipulated Pathway Agreement (Exhibit A) nor its December 6, 2023 First Amendment released the claims pleaded herein. Each was signed by Plaintiff in his corporate capacity on behalf of ITU; neither purported to release Plaintiff's individual claims; neither identified by name, capacity, or status the conduct of the individual Defendants now sued; and neither could lawfully release the federal statutory civil rights or Civil RICO claims. To the extent any release purported to reach Plaintiff's individual claims, it was procured by the fraud-in-inducement of Defendant Studley's representations in the December 6, 2023

Amendment, and is unenforceable. Defendants' continuing conduct post-Agreement — including the post-visit addition of CFR 1.8 and the June 27, 2025 final withdrawal — independently voids any release as to post-Agreement continuing wrongs.

### C. Cal. Corp. Code § 5239 Volunteer Director Immunity — Inapplicable or Carved Out

59. § 5239(a) is inapplicable to Defendants Studley, Bond Huie, Toyoda, Oberg, Scanlon, Winn, O'Brien, and Ryan because each was a compensated employee or officer, not a volunteer director. § 5239 also does not apply to WSCUC itself. To the extent Defendants Tambascia, Gardina, Dasenbrock, Bannister, Cheung, and Bhaskar Kura may be characterized as volunteer directors, each falls within one or more of the § 5239(b) carve-outs: self-dealing under § 5233 (Cheung's personal negotiation of O'Brien's compensation and approval of the August 2019 severance; Ryan's successive WSCUC Commissioner / Sofia EVP / ITU Provost / Sofia President roles); intentional, wanton, or reckless misconduct (Cheung's documented instruction to MoFo not to investigate); and knowing violation of statute. Federal civil rights and federal Civil RICO claims override any state-law nonprofit-director immunity under federal supremacy. *Howlett v. Rose*, 496 U.S. 356 (1990). Any quasi-judicial immunity is defeated by ultra vires action, combined investigative-prosecutorial-adjudicative roles, actual malice with racial animus, persistence in adjudication of one's own conduct, and concerted action in restraint of trade.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION — Violation of 42 U.S.C. § 1981 (Race Discrimination — Continuing Violation)

**(Plaintiff in his individual capacity, against Defendants Studley, Toyoda, Tambascia, Bond Huie, Oberg, Gardina, Scanlon, Dasenbrock, WSCUC, and Does 1-25)**

60. Plaintiff incorporates Paragraphs 1-59. Plaintiff is a Chinese-American national of the United States within the protection of § 1981. Plaintiff was at all material times a direct party to a contractual relationship subject to § 1981 — specifically, Plaintiff's individual employment contract as ITU's CEO entered into following Plaintiff's October 15, 2019 reinstatement and continuing through the present. Under *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006), the § 1981 plaintiff must be a party to the contract whose enjoyment is impaired; Plaintiff satisfies that requirement. The Defendants' continuing course of conduct described above constitutes a single unlawful practice of race-based interference with the making and enforcement of Plaintiff's individual employment contract on the basis of his Chinese ethnicity. The comparator evidence (Exhibit J vs. Exhibit D) and the temporal proximity (October 15 → October 16-18, 2019) supply prima facie discriminatory intent. The conduct continues to the present and is timely under *Morgan* and *Richards*. Plaintiff is entitled to compensatory damages, punitive damages, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION — Violation of 42 U.S.C. § 1985(3) (Civil Rights Conspiracy — Continuing Violation)

**(Plaintiff in his individual capacity, against Defendants Studley, Toyoda, Tambascia, Bond Huie, Oberg, Gardina, Scanlon, Dasenbrock, WSCUC, and Does 1-50)**

61. Plaintiff incorporates Paragraphs 1-60. Two or more Defendants conspired for the purpose of depriving Plaintiff of the equal protection of the laws, motivated by class-based racial animus. The intra-corporate conspiracy doctrine does not bar this claim because the conspiracy includes external co-conspirators (including the 2015-2019 takeover Defendants whose conduct continues to inform the cartel structure) and includes WSCUC officers acting outside the scope of their agency for WSCUC. The conspiracy continues through the continuing overt acts described

above, each of which restarts the clock under continuing-conspiracy doctrine. Plaintiff is entitled to compensatory damages, punitive damages, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION — Violation of California Cartwright Act (Cal. Bus. & Prof. Code § 16720)

**(Brought derivatively on behalf of ITU under Cal. Corp. Code § 5710, against All Defendants)**

62. Plaintiff incorporates Paragraphs 1-61. The California Cartwright Act tracks federal Sherman Act precedent. Under *NCAA v. Alston*, 594 U.S. 69 (2021), private regulatory bodies — including educational accreditors — are subject to full antitrust scrutiny under the rule of reason. WSCUC, until 2021, was the sole regional accreditor for institutions in California and Hawai'i. The named Defendants, together with WSCUC officers, commissioners, accredited-institution officials, and Doe Defendants, engaged in concerted action in restraint of trade in the relevant market for higher-education accreditation services. The concerted action includes the conduct alleged throughout this Complaint. ITU is a competitor and consumer in the relevant market and has suffered antitrust injury — including the loss of accreditation and the depletion of cash reserves. ITU is entitled to treble damages under Cal. Bus. & Prof. Code § 16750(a), plus attorneys' fees and injunctive relief. Plaintiff brings this Count on ITU's behalf derivatively because the Defendants' continuing conduct itself is what has prevented the ITU Board from pursuing the claim in the ordinary course; demand is excused as futile under the circumstances.

## FOURTH CAUSE OF ACTION — Tortious Interference with Contractual Relations

**(Plaintiff in his individual capacity, against All Defendants)**

63. Plaintiff incorporates Paragraphs 1-62. At all material times following October 15, 2019, Plaintiff had a valid, enforceable individual employment contract with ITU as its President and Chief Executive Officer. The Defendants knew of that contract and engaged in continuing intentional acts — including the October 18, 2019 Show Cause, the July 18, 2024 withdrawal, the June 27, 2025 final withdrawal, the October 28, 2025 Cease and Desist, and the continuing WSCUC-website publication — designed to and that did disrupt that contract by foreclosing ITU's institutional ability to continue Plaintiff's employment. The continuing conduct continuously interferes with the contract and constitutes ongoing wrongful interference.

## FIFTH CAUSE OF ACTION — Tortious Interference with Prospective Economic Advantage

**(Plaintiff in his individual capacity, against All Defendants)**

64. Plaintiff incorporates Paragraphs 1-63. Plaintiff had economic relationships with prospective students, faculty, donors, alternative accreditors, and other third parties that probably would have resulted in future economic benefit to Plaintiff in his role as ITU's CEO. The Defendants knew of those relationships and engaged in independently wrongful continuing conduct (race-based interference under § 1981, the cartel-coordinated discriminatory enforcement, and other wrongful acts described herein) designed to and that did continue to disrupt those relationships.

## SIXTH CAUSE OF ACTION — Aiding and Abetting Breach of Fiduciary Duty

**(Brought derivatively on behalf of ITU under Cal. Corp. Code § 5710, against Defendants Winn, Bannister, Cheung, Ryan, Bhaskar Kura, and Does 26-50)**

65. Plaintiff incorporates Paragraphs 1-64. Defendant O'Brien, during his February 2015 to August 2019 tenure as ITU CEO, owed ITU fiduciary duties under Cal. Corp. Code §§ 5230, 5231, 5233, and 5235. Defendant O'Brien breached those duties through undisclosed Sofia conflict, self-dealing, excessive compensation, retaliatory termination of whistleblowers, the

depletion of $20 million in ITU cash reserves, the July 11, 2019 Sofia student-transfer disclosure, and acceptance of the August 2019 approximately $80,000 severance. The Defendants named in this Count had actual knowledge of Defendant O'Brien's breaches and provided substantial assistance. ITU is entitled to recover damages caused by O'Brien's breaches and the aiding-and-abetting conduct of these Defendants. Plaintiff brings this Count derivatively on behalf of ITU; demand is excused as futile because the Defendants' continuing conduct is itself the obstacle to the Board's pursuit of the claim.

## SEVENTH CAUSE OF ACTION — Breach of Fiduciary Duty and Disgorgement (Cal. Corp. Code §§ 5230, 5231, 5233, 5235)

**(Brought derivatively on behalf of ITU under Cal. Corp. Code § 5710, against Defendants O'Brien, Cheung, Bhaskar Kura, Ryan, and Does 26-50)**

66. Plaintiff incorporates Paragraphs 1-65. The Defendants named in this Count owed ITU fiduciary duties under Cal. Corp. Code §§ 5230, 5231, 5233, and 5235. Each breached those duties as described above. ITU seeks a personal money judgment against Defendant O'Brien in the full amount of compensation he received from ITU during his February 2015 to August 2019 tenure (including the approximately $80,000 August 2019 severance), plus prejudgment interest, and against Defendant Cheung jointly and severally with Defendant O'Brien for the August 2019 severance and the institutional damages traceable to Defendant Cheung's documented intentional suppression of the Morrison Foerster investigation. Plaintiff brings this Count derivatively on behalf of ITU.

## EIGHTH CAUSE OF ACTION — Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200)

**(Plaintiff in his individual capacity and derivatively on behalf of ITU, against All Defendants)**

67. Plaintiff incorporates Paragraphs 1-66. The Defendants engaged in unlawful, unfair, and fraudulent continuing business acts and practices within the meaning of § 17200, including violations of 42 U.S.C. §§ 1981 and 1985(3), the Cartwright Act, 18 U.S.C. § 1962, 34 C.F.R. Part 602, California nonprofit governance law, and WSCUC's own published procedures. Plaintiff and ITU are entitled to restitution, disgorgement, and injunctive relief.

## NINTH CAUSE OF ACTION — Declaratory and Injunctive Relief

**(Plaintiff in his individual capacity and derivatively on behalf of ITU, against All Defendants)**

68. Plaintiff incorporates Paragraphs 1-67. An actual case and controversy exists concerning the validity of the June 27, 2025 final withdrawal of ITU's accreditation, the July 18, 2024 Commission Action Letter, the procedural framework employed by WSCUC in the 2019-2025 period, the personal liability of each Defendant, and Plaintiff's and ITU's entitlement to injunctive relief against ongoing wrongful conduct.

## TENTH CAUSE OF ACTION — Violation of Civil RICO (18 U.S.C. § 1962(c) and § 1962(d)) — Continuing Pattern

**(Plaintiff in his individual capacity, against Defendants Studley, Toyoda, Tambascia, Bond Huie, Oberg, Gardina, Scanlon, Dasenbrock, Winn, O'Brien, Cheung, Ryan, WSCUC, and Does 1-50)**

69. Plaintiff incorporates Paragraphs 1-68. WSCUC is an "enterprise" within the meaning of 18 U.S.C. § 1961(4). The individual Defendants are persons within the meaning of § 1961(3) who conducted the affairs of the WSCUC enterprise through a continuing pattern of racketeering activity in violation of § 1962(c). The pattern is constituted by the mail and wire fraud predicate acts alleged in Paragraph 51. The pattern satisfies the open-ended continuity standard of *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989), because the predicate acts continue to the present and threaten future continuation absent injunctive relief. The Defendants also conspired to violate § 1962(c) in violation of § 1962(d). Plaintiff has suffered continuing injury to his business and property under *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), and is entitled to treble damages, costs, and reasonable attorneys' fees under 18 U.S.C. § 1964(c).

## ELEVENTH CAUSE OF ACTION — Common-Law Fraud and Negligent Misrepresentation

**(Plaintiff in his individual capacity and derivatively on behalf of ITU, against Defendants Studley, Bond Huie, WSCUC, and Does 1-25)**

70. Plaintiff incorporates Paragraphs 1-69. Defendants Studley, Bond Huie, and WSCUC made the representations contained in the November 14, 2023 Stipulated Pathway Agreement (Exhibit A) and the December 6, 2023 First Amendment, including Defendant Studley's December 6, 2023 representation at Appendix B that "[t]he Commission looks forward to the opportunities of the Special Visit and June 2024 Commission meeting." The representations were material to Plaintiff's and ITU's decisions to enter the Stipulated Pathway and to dismiss the pending appeal. The representations were false. Defendants either knew the representations were false at the time made or made them with reckless disregard for whether they would be honored. Falsity is proven by Defendants' own subsequent admission in Exhibit E that "Compliance with CFR

1.8 was added following the Special Visit." In the alternative, the representations were made without reasonable grounds for believing them to be true, constituting negligent misrepresentation under California law.

## TWELFTH CAUSE OF ACTION — Retaliation under 42 U.S.C. § 1981 (*CBOCS West*) — Continuing Violation

**(Plaintiff in his individual capacity, against Defendants Studley, Toyoda, Tambascia, Bond Huie, Oberg, Gardina, Scanlon, Dasenbrock, Winn, WSCUC, and Does 1-50)**

71. Plaintiff incorporates Paragraphs 1-70. Under *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008), § 1981 prohibits retaliation against persons who oppose race-based contracting discrimination. Plaintiff engaged in protected opposition activity throughout 2016 — the Morgan Lewis letter (Exhibit B), the March 18, 2016 whistleblower demand to Defendant Cheung, the May 18, 2016 ITU Official Complaint (Exhibit C), the April 11, 2016 federal-agency complaint to Secretary King cc President Obama (Exhibit H), the June 27, 2016 federal-agency complaint to Director Bounds cc King, Eaton at CHEA, Petrisko, and Office of US President (Exhibit I), and the 22-Commissioner Drive — and continued through Plaintiff's January 7, 2025 written demand to Defendant Toyoda and the present action. Defendants took and continue to take adverse retaliatory action against Plaintiff in retaliation: the October 18, 2019 Show Cause within three days of Plaintiff's reinstatement (Exhibit D); the "moving the target" enforcement; the June 23, 2024 prejudgment letter (Exhibit F); the July 18, 2024 Commission Action Letter (Exhibit E); Defendant Studley's selective oversight of the appeal of her own conduct; the June 27, 2025 final withdrawal; and Defendant Toyoda's October 28, 2025 Cease and Desist letter and continuing WSCUC-website publication. The causal connection is established by temporal proximity (October 15 → October 16-18, 2019), Defendant Studley's selective silence during the

O'Brien-Ryan administration, the disparate-treatment comparator (Exhibit J vs. Exhibit D), the cartel-coordinated regulatory pattern, and the post-reinstatement compensation suppression. The conduct continues to the present and is timely under continuing-violation doctrine; the most recent retaliatory act — Defendant Toyoda's October 28, 2025 Cease and Desist letter — is well within the four-year § 1981 limitations period. Plaintiff is entitled to compensatory damages, punitive damages, and reasonable attorneys' fees under 42 U.S.C. § 1988.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

**On the individual causes of action:**

1. For compensatory damages in an amount not less than Thirty Million Dollars ($30,000,000) according to proof at trial, including back pay, front pay, reimbursement of personal funds (including the 2006 family-home mortgage, the 2019-2020 additional mortgage, and approximately $1,020,000 in personal loans and donations from Plaintiff to ITU), lost contractual benefits, reputational damages, emotional distress damages, lost institutional legacy interest, and consequential damages;

2. For statutory damages under 42 U.S.C. §§ 1981 and 1985(3), 18 U.S.C. § 1962, and the Cartwright Act;

3. For treble damages under 18 U.S.C. § 1964(c) (RICO) and Cal. Bus. & Prof. Code § 16750(a) (Cartwright);

4. For punitive damages not less than One Hundred Million Dollars ($100,000,000) sufficient to deter and punish willful, malicious, oppressive, fraudulent, and racially-motivated conduct;

5. For attorneys' fees and costs under 42 U.S.C. § 1988, 18 U.S.C. § 1964(c), Cal. Bus. & Prof. Code § 16750(a), Cal. Code Civ. Proc. § 1021.5, and other applicable statutes;

6. For pre-judgment and post-judgment interest at the maximum rates allowed by law;

**On the derivative causes of action (recovery to ITU):**

7. For a personal money judgment in favor of ITU and against Defendant O'Brien for the full amount of compensation Defendant O'Brien received during his February 2015 to August 2019 tenure (including the approximately $80,000 August 2019 severance);

8. For a personal money judgment in favor of ITU and against Defendant Cheung jointly and severally for the August 2019 severance and the institutional damages traceable to his suppression of the Morrison Foerster investigation;

9. For treble damages in favor of ITU under the Cartwright Act;

**On both individual and derivative claims:**

10. For declaratory and injunctive relief vacating WSCUC's June 27, 2025 final withdrawal of ITU's accreditation, restraining further interference with ITU's prospective relationships, and restraining further publication on WSCUC's website of pretextual non-compliance disclosures concerning ITU and Plaintiff;

11. For restitution and disgorgement of all sums wrongfully obtained or retained;

12. For such other and further relief as the Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated: June 29, 2026

Respectfully submitted,

YAU-GENE CHAN

Plaintiff In Propria Persona, on his own behalf and derivatively on behalf of International Technological University

---

## VERIFICATION

I, YAU-GENE CHAN, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The matters stated are true based upon my own knowledge, except as to those matters stated on information and belief; as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 29 day of June, 2026, at Santa Clara, California.

---

YAU-GENE CHAN, Plaintiff

---

## EXHIBIT LIST

Exhibit A: Agreement as to a Stipulated Alternative Pathway for Resolution of the Pending Appeal between WSCUC and ITU, dated November 14, 2023, with December 6, 2023 First Amendment

Exhibit B: Letter from Colin C. West, Partner, Morgan Lewis & Bockius LLP, to ITU Board of Trustees, dated April 11, 2016

Exhibit C: ITU Official Complaint to WSCUC, submitted May 18, 2016, with April 18, 2016 attachment

Exhibit D: WSCUC Show Cause Order to ITU, signed by Jamienne S. Studley and Reed Dasenbrock, dated October 18, 2019

Exhibit E: WSCUC Commission Action Letter to ITU, signed by Jamienne S. Studley, dated July 18, 2024

Exhibit F: Letter from Jamienne S. Studley to Yau-Gene Chan, designated “High Importance,” dated June 23, 2024

Exhibit G: Board Motion for Immediate Vote to Terminate Overcompensation of CEO/President Greg O’Brien, submitted by Ivan Chan, dated August 1, 2019, with Attachment 1 (CA AG Guidelines to Charities excerpts)

Exhibit H: Letter from Yau-Gene Chan to John B. King, Jr., U.S. Secretary of Education, dated April 11, 2016, contemporaneously copied to President Barack Obama

Exhibit I: Letter from Yau-Gene Chan to Herman S. Bounds, Jr., Director, Accreditation Group, U.S. Department of Education, dated June 27, 2016, contemporaneously copied to Secretary King, Judith S. Eaton (President, CHEA), Mary Ellen Petrisko (President, WSCUC), and Office of the U.S. President

Exhibit J: WSCUC Commission Action Letter to ITU, signed by Jamienne S. Studley, dated July 20, 2018, reaffirming ITU’s accreditation for a period of six years with eight commendations to ITU under Defendant O’Brien’s leadership